The Honorable Judges of the United States Court of Appeal in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this honorable court are admonished to draw near and give their attention. As the court is now sitting, God save the United States and this honorable court. Good morning, ladies and gentlemen. Our first case for argument this morning is United States v. Coates. Mr. Hillis. Good morning. You may have pleased the court, counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office, and I represent Mr. Coates. Mr. Coates' appeal challenges the denial of his motion to suppress evidence. In this case, the suppression was based on an officer's discovery during a traffic stop of a hand-rolled cigarette, a suspected marijuana cigarette. But as we pointed out in our brief, that the officer's identification of a suspected marijuana cigarette is not itself probable cause, and this dates back to at least Warlick v. Cross, which has been cited in Seventh Circuit precedent to say you need an additional factor to substantiate the suspicion. And barring that, the presence of a hand-rolled cigarette is not probable cause for the search, which is important here because the methamphetamine that's located in Mr. Coates' pocket is found pursuant to a search incident to arrest. Mr. Hillis, my principal reaction to this line of argument is who cares, since there was a controlled buy of methamphetamine that supplied probable cause. Sure. If there was a valid controlled buy, Your Honor, as determined by the district court in supporting facts, I would say we'd be in a deep hole. But there was never a finding of a valid controlled buy by the district court, and we— I don't—what do you mean by a valid controlled buy? Sure. As we listed in our brief, a valid controlled buy is typically done where officers will search the confidential informant prior to the transaction. There's certainly one way to do it, but the question is whether the circumstances gave probable cause, not whether it meets some administrative definition. Well, those are not administrative definitions. That's a court-supplied determination, and we've listed what those factors are and explained in the brief why they were not satisfied here. So we don't think there was a valid controlled buy. Certainly if Your Honor disagrees, then I would say that it's something that we can consider a remand for, but there's never a finding by the district court. The district court did find in its order that the confidential source purchased two ounces of meth from your client, and in reaching that conclusion relied on testimony from the DEA, a video recording, a DEA prearranged sale. Why isn't that sufficient? It sounds to me like you're arguing they can't prove beyond a reasonable doubt, not that they can't establish probable cause. Yeah. I'm not arguing beyond a reasonable doubt, Judge. I'm saying that for all the things the district court relied on, it was incomplete. So the analysis should also consider— How is that clearly erroneous, though, at this stage again? Well, it's de novo review about whether— But not for factual findings. We're not contesting any factual findings. All the facts that Your Honor said are correct, but additionally, an important fact, a very salient fact here, is was the individual patted down? So if you come back with two ounces— But the district court made the factual finding that there was a controlled buy. No determination about whether there was a pat down, et cetera, and if a person is bringing drugs— But why does that matter? I think that's what Judge St. Eve is trying to say. If we know that this is a confidential source, and the district court calls it a CS, a confidential source, and we know there was the November 17 controlled purchase of the two ounces, and there are statements, he carries a firearm, there's all sorts of stuff. Why isn't that enough to say, OK, the next time we see this guy, we're going to pull him over? You know, we have probable cause. Well— I mean, I understand that you're—the point is, do we know, you know, various other things about this buy that you find out when the person is patted down before and the money is controlled and all the rest of it, but that normally comes up in a different context. It normally comes up in the context where the government is endeavoring to establish a valid controlled buy, because it's not for the defense to elaborate on those things. I just don't get it. Valid controlled buy. Yes. The question is whether there was probable cause, and the Supreme Court in Gates says that's determined by the totality of the circumstances and not whether some checklist has been met. I just don't get what this valid controlled buy checklist is. Well, it's part of the totality of the circumstances. Per Gates, you would want to know, did the person in fact bring the drugs or have a chance to obtain the drugs on the route to making the transaction? Other—if you don't know that, you're not certain where the drugs— That sounds like proof beyond a reasonable doubt again. It is not. It's a salient fact. It does not come under determination. Why isn't it sufficient just to rely on the testimony from the DEA officer here? Because they didn't cover that either. Who observed that? It just wasn't covered, Judge. And there were other things that weren't done right here either about maintaining constant surveillance, things like that. Those are all things that we pointed out. And so there are facts that would be relevant that are covered by the district court under the totality of the circumstances analysis, but that doesn't mean you get to exclude other things that are also pertinent to the determination that are also part of the totality of the circumstances. Those are the problems here. Do you agree if there was probable cause to arrest him at the time that the search warrant is valid? If they had probable cause for a search incident to arrest, or are we talking about the later search warrant that is issued? If they had probable cause to arrest him when they pulled him over, do you agree that the search of him was proper? Well, assuming, I'm not certain what the grounds would be, but if there's a valid... Probable cause to arrest, so search, a pat-down pursuant to the arrest. Right. I just don't know what the linchpin is to make it probable cause, but I'm agreeing that... Accept my premise, please. If there is a valid arrest, then there would be a valid search incident to arrest under GAN. And do you also agree if there was a valid arrest that the search warrant that was later obtained was valid as well? It seems like your entire argument for the search warrant is based on the lack of PC to arrest. Yeah, that's a central part of the contention, yes. Okay. So you would agree that if there was probable cause to arrest him, that the search warrant itself is valid? I think that we would be in that position. Okay. Okay. If I may interject for just a moment, a slightly different tack, but something that is important, not just for this case, but for subsequent cases. So the government has asserted forcefully that there is a waiver here of this entire argument. But we apologize for the late submission yesterday. But Williams, the United States v. Williams case, which relies on he v. City of Escondido and in fact cites additional authorities such as Guzman Padilla, says that in their work for the government, for the government's advantage, when the government offers a new theory on appeal that is still in the wheelhouse, that is to say part of the Fourth Amendment claim that's asserted in the district court as it was in Williams and in Guzman Padilla, that there is no waiver. Because waiver applies to claims, not to legal arguments. And so consistent with those cases, and principally with Yee, we would say that the government's waiver argument cannot have any force here, because otherwise we would have a circuit split, of course, between the Ninth Circuit and the Seventh Circuit, if they're contrary conclusions. Not for the first time. Well, we'd like to avoid an additional one, Judge. It just seems like the appropriate course in this case, given the clear language from Yee. With that, I have nothing additional. I'll save the balance of my time for rebuttal. Thank you. Thank you, Mr. Hillis. Mr. Reitz. May it please the Court, Brian Reitz for the United States. The controlled by here established probable cause to stop, search, and then arrest Mr. Coates. Below, there was no dispute that a controlled by occurred. The district court, in the finding, found that a controlled by occurred. The government, in its suppression opposition, argued that the controlled by was relevant to the probable cause to arrest Mr. Coates. Here, Mr. Coates argues some facts around the— Below, what you're arguing here, that the controlled by was a separate basis for the probable cause. You agree with that? Yes, we agree. Our argument here is a little different. It's more, I think, incisive than it was below. It's within the Court's practice to affirm on those grounds. We've cited a number of cases where the Court's done so. So, what's the standard we look at if it's something you didn't raise below? I know in Edwards, where the courts who respond to you raise something, we said it was an exceptional case. Is that the standard, or is it something different? Well, Edwards was a case where we forfeited, and we did actually introduce evidence about the controlled by. This, I think, falls in the category of adding an argument. This is expanding on our probable cause argument. Even the 28-J letter that Mr. Coates filed yesterday, the government below argued that there's probable cause to arrest someone because they ran from police. On appeal, they argued that there's probable cause to arrest someone because they ran and then cited a statute of which crime that committed. It's all within that. So, I think the standard is the Court can affirm on any grounds, even if it's— That's much closer. I mean, you always have to ask, when you don't raise a point—I mean, you were all about the whatever we're supposed to call it, the joint, the marijuana, cigarette, et cetera, the rolled thing. And that elicits a certain response from a defendant. And so, here we have in these briefs the point that it could have been tobacco, there was no odor, all these kinds of arguments. Had you raised the argument about the controlled buy, then one can infer from what we're hearing this morning is that perhaps there would have been some exploration about whether the confidential source was reliable, whether the buy really was a transfer from Mr. Coates to this person. It seems like a different set of facts might have been explored. And you've deprived the defendant of the opportunity to do that by coming up here and now, only now, raising this point. I think three points, maybe just two. First, I would say, if the Court is uncomfortable deciding just on the controlled buy grounds, it can certainly be a factor in whether there was probable cause on November 24th with everything else that occurred. So, even if the Court's not just going to decide on the controlled buy, I think it's a very strong factor adding to what was already probable cause on November 24th. And the second point I want to make, I think I can explain why there was an exploration about that at the suppression hearing. Now, this is someone out of the record, but I think it explains why. Prior to the suppression hearing, we provided defense counsel below with discovery that showed that all the things that the defendant is now complaining about actually occurred. The CI was searched, all that. I think that's why the suppression hearing went as it did, and I think that's the resignation you hear in the defense counsel below's question about, why didn't you just arrest him because there was probable cause after the controlled buy? Because the defense attorney didn't pursue that line of questioning because he knew the result. And I think— But this is not reflected in any transcript or order? I mean, because you certainly—the order on this point, that's in front of me anyway, just recounts November 2020, a confidential source provided to Agent Arthur, whatever he did, and it's just a story. Correct. I think in that, the case is similar to Stewart, which we cite is the reason there's not much record is because defense didn't pursue the line about the controlled buy being sufficient or insufficient because the evidence available to him, again, is not in the record. I understand that. But it wasn't developed because I think he knew it was a dead end. And I think you see that in the question that we cite in our brief. But all that said, I would go back to, at the very least, the controlled buy is relevant to whether there was probable cause on November 24th. If there are no questions about that, I just want to make a quick point about ye. First of all, I don't want to say that anything untoward occurred, but this was in the reply brief. It's a pretty, I think, would be a revolutionary extension of the way this court has normally policed forfeiture and waivers. So if the court is going to entertain that, we would request supplemental briefing on that point. Though, we don't think he stands for the proposition that defendant does. However, I tried, and it was difficult to respond to in a 28-J. And I don't think it was really appropriate fodder for a 28-J from our end to respond. Again, I'm not criticizing Mr. Coates. So if the court is going to entertain that, we would just request supplemental briefing on that. If there are no further questions, we ask the court to affirm. Thank you. Thank you, counsel. Anything further, Mr. Hillis? There's nothing untoward about raising a waiver response after a waiver argument is made. The first time that the waiver argument was presented was in the government's response brief. Her occasion to respond is then in the reply, which we did. And we filed the 28-J letter. And the government is welcome, from the court's discretion, to say additional things on it. It could have been prior to now. It hasn't. But we leave that to the court's determination about what's an appropriate course of disjunction. As for whether or not additional facts would determine that there was a control by, we're constantly in a hole as the sort of pinch hitter on the appeal. We come in. We don't know what the facts are. As the government says that they exist below, and discovery, and all sorts of things that may be off the record. The practice of the court is to rely on the facts that are in the record when determining the legal issues. And here, there are no facts that support what the government says below. And it admits as much when it says it has to go beyond the record to answer the court's question. So one more thing, and then I will be done. And that is I have to have a slight retraction in my answer to Your Honor's question, Judge St. Eve. Whether or not there would be probable cause then to search the home, the residence, which is the RV where the firearms were discovered, there would be probable cause. We assert that there's some problems related to Frank's line of inquiry here. But ultimately, we do have a problem with relying on a warrant to search a home when under the Sixth Circuit Authority and Sanders and other cases, we've got the government saying Zemudio. We're saying that Zemudio is a little bit too far reaching and that we should rely instead as the Sixth Circuit has to establish facts in addition to show why a search of the residence, of the additional place, would result in evidence of the crime. The government didn't do that here. And we think that Sanders is the better course despite the government's frequent reliance on Zemudio that virtually allows him in all instances where there's a drug transaction to also search the resident just because the person's a drug dealer. We think that that is too broad and we ask the court to no longer follow that bit of With that, I have nothing further. Thank you, Counsel. The case is taken under advisement.